Ms. Clark v. New York City Housing Authority Ms. Clark, can you hear me okay? Yes, can you hear me? I can hear you pretty good, yes. Just give us one second as we're setting up council and getting everybody ready. Okay. So, Ms. Clark, you have reserved one minute for rebuttal, so that gives you four minutes to start. The floor is yours. You may proceed. Okay, good morning to all. My name is LaShawn Clark. I'm a plaintiff advocate in this case. The standard of review is de novo. My argument would mainly address FEDR 26A2 requirements of disclosure of expert witness testimony regarding retained experts versus non-retained experts. The question is, did the district court abuse of discretion commit legal error and prejudice me when it admitted the Rules 26A2B report of defendant-appellee retained expert witness, Howard Sandler, without any analysis of his admissibility, as required by FRE 702, abandoning his gatekeeping duties, failing to decide my lawyer challenge, also including my non-retained treating physician's Rules 26A2C report? The answer is yes, because the district court's errors were not harmless. The omission of a previously admitted expert testimony and the erroneous exclusion of expert testimony is examined under the harmless error standard and the reasonable probability test. The district court's errors were harmful and prejudiced me when it only analyzed the Rules 26A2C report of my non-retained expert, Dr. O'Rourke, filed at Docket 262.4, erroneously excluding it, but failed to decide my FRE 702 lawyer challenge, nor performed any gatekeeping duties for defendant-retained expert, Howard Sandler's Rules 26A2B report. The district court, relying on defendant's expert opinion, would irrefutably manifest an offense. Most notably, at Docket 325, opinion order on page 4, first paragraph, lines 7 through 11, and at Docket 311 in the R&R, pages 3 and 9, that state, there is no evidence that Clark was exposed to either asbestos or crystalline silica from apartment 1H, and that whatever levels of exposure she had were not capable of causing harm or disease. This unfounded opinion of defendant-retained expert significantly impacted the outcome, granting summary judgment to all defendants, and influenced the district court in improperly weighing the evidence in the materiality assessment of my fraudulently concealment claim for silica against Eicher, ruling it was immaterial despite the evidence in the record of defendant's evidence that Arnex K-15 contains 30 to 60% silica and was in fact used as the asbestos abatement. And this report, Docket 121-2, Arnex MSPS, proving it's hazardous, pamphlet-causing silicosis, also known as pneumoconiosis. This violated my constitutional set of amendments of dental rights to a crime by jury that could constitute structural error. There should have been a reasonable possibility that if the court had not enrolled me in the K-15 defendant-retained expert report improperly, and didn't enroll me in K-15, the report filed at Docket 262-4 of my previous visit to Dr. O'Rourke as a non-K-15 expert, there could have been a different result, where a jury could have proven my favor at a trial, and Dr. O'Rourke's report was important to the merits, as she did diagnose me with asbestos and silica exposure, stating it was in the apartment I lived in in New York. And there is evidence in the record proving how much asbestos and silica I was exposed that proves general and specific correlation. The district court failed to distinguish between retained experts and non-retained experts, erroneously implying in the R&R Page 10 footnote that my doctorate report was subjected to a Rule 26A2B report. The horizontal star decisive of mandatory guarded case law to support my argument, as cited in my FRAP 28J letter at 2nd Circuit Doctrine 123, is in Bank of China, New York Branch, v. NPM, LLC, 2nd Circuit, 2004. Ms. Clark? The district court produced this? Yes. Can I ask you a question? Sure. What is the evidence that establishes the link between your diagnosis and the asbestos or the Ardex? What is the evidence that was before the district court at the time of the ruling? It was the manufacturer's safety data sheet that was filed at Arte 121-2. The safety data sheet clearly claims that the Ardex is hazardous, that it can cause silicosis, also known as pneumonocosis. It tells you not to breathe the dust and that it causes respiratory illness. So with that being said, that's evidence to support to say that the product was a harmful product. And there's no evidence in the record to support that any new floor tile could be put down on February 10th or 4th and February 11th or 4th, which leads to genuine issues of material fact and dispute. So it seems as if Ardex K-15 was placed over these tiles if there was none supporting it, because there's no evidence in the record to prove that any new floor tile was ever purchased nor installed. All right. Thank you. And due to the diagnosis that I have, I'm okay. Sorry. No. All right. Thank you. All right. So the district court, okay. So all right. Well, so we're a little bit over, but you have a minute of rebuttal left, so we will hear back from you. First, we'll hear from Ms. Skolnick. So actually all three of you are going to argue, but you're splitting it up 3-1-1? Yes. Okay. My name is Miriam Skolnick, and I represent the New York City Housing Authority. What is clear from this record is that any asbestos that was in this apartment was removed in 2004 before the plaintiff moved into the apartment. What's also clear from this record is that Ardex in the levels that were present in this apartment could not cause injury. There's no contradictory evidence. The Ardex, according to our expert, which was uncontradicted, is encapsulated. Any silica in there could not have been released into the air. The air was tested after we removed the asbestos. All the asbestos was gone. So there's no general causation evidence. There's no specific causation evidence here. There's nothing that could link it to Ms. Clark's injuries. If there was anything linking it to those injuries, then the statute of limitations has run on this case long ago because the respiratory ailments that she now says were caused by these various ailments arose in 2011, 12, maybe even earlier, were part of a prior lawsuit. And they had previously been dismissed, and the new lawsuit was brought almost ten years after she already knew that she was injured, which under New York law, statute of limitations on a toxic tort begins to run when you have symptoms, not when you know the cause. And that's already been established. So unless the court has any questions. All right. Thank you. We'll now hear from Mr. Sasser. Good morning. May it please the court. My name is David Sasser. I have New York Installation and Environmental Services. We agree that it's relatively straightforward on the expert issue. The case law, which we cited in our brief, relatively clear that you need an expert to establish general and specific causation. Here Ms. Clark admittedly did not get an expert. She didn't mention it much in her arguments, but in her papers and before the lower court, she at times said she didn't believe she needed an expert or that she tried to get one and couldn't. The idea that she didn't think she needed an expert is not supported by the evidence. And that's what Judge Engelmeyer found in his decision. He looked at it. I think we, my client initially, there was a certificate of default against my client. We moved to vacate that or to set it aside. And in our motion to set it aside, we set forth causation as a meritorious defense. And in response to that motion to set aside the default, Ms. Clark wrote at docket 195, this was back on May 3rd, 2021, I will be providing scientific expert witness written report to support causation. She made some, she accused one of my colleagues of being discriminatory. I believe my colleague made such biased statements because I'm a black woman who is pro se, and he automatically assumes I would not be able to provide written expert testimony. So that's from May 3rd, which she said on her own, I know I need an expert. She had already lost in state court because the experts are the lack of proving causation in state court. So I think from that alone, it's pretty open and shut. We've got all the other defenses as well. But then to just address the Sandler stuff she mentioned today, if you look at Engelmeyer or the magistrate judge's decisions, Sandler isn't a factor in them. They decide without addressing our experts, you know, whether it's admitted, not admitted. Just because she didn't have an expert, it was dispositive, so she didn't even meet her burden. So we get into a dour hearing, gatekeeper, whether the court, you know, should not have allowed our expert or not. It doesn't matter. If she didn't have an expert and the court did not base its decision on anything our expert said. Lastly, on the MSDS, on the ARDEX, there, as to the, you know, the evidence that MS, you know, ARDEX or asbestos can cause these various injuries, nothing in the MSDS says ARDEX causes lupus or the exposure to silica causes these injuries. I'm not aware of any case law where it says an MSDS is sufficient to establish general causation. She doesn't have anything else. She was warned multiple times by the court about the expert. She knew about the expert. She failed to retain one, and that should be dispositive. This case goes back to 2004. It has to end at some point. All right. Thank you. And then for the last minute, we'll hear from Mr. Schneider. Judge, I won't rehash all the same arguments. So I think we split it up the way we did, thinking that we may want to do that. But we all have the same points that we've made. So I'll give my time to Ms. Clark to reply. Okay. All right. We're all making the same points. All right. So with that, then, Ms. Clark, you have a minute to rebuttal. I believe that the special limitations are posed due to the fact that NYCHA committed fraudulent filming. They admitted that they did so. So with that being said, I didn't know any of the files were still above me. And the thing is that they keep saying that I need to retain an expert. That's what my argument is. I never did retain an expert because I was using my treating physicians as a non-retaining expert. But with that being said, a Rule 3618B report would not have been necessary. And that's what this report was saying. They kept stating that I needed to retain an expert. There are two different classes of experts. The whole purpose of Rule 26 is to avoid prejudice and surprise to all parties to know what evidence would be used at trial and to allow enough time for objections if any. Having said that, if the district court would have admitted the report of my treating physician, Dr. Arun, as a non-retained expert, it would not have prejudice nor surprise any of the defendants. And the district court and all defendants were aware of me wanting to use my treating physician, Dr. Arun, as an expert. And the report at District Court Box 262-40 that was timely submitted on February 1, 2022 by the deadline February 16, 2020, as ordered at District Court Boxes 216, 253, and 255. I just was recently diagnosed with pneumococcal psilocybin, even though I was not diagnosed with it at the time. Lupus, COPD, and all the other elements that I have are associated with both asbestos and silica. Some is not associated with asbestos, but they are unequivocally associated with silicosis, with silica exposure. There's nothing else that can cause pneumococcus. There's nothing else that can cause asbestos, clearly. All right, thank you very much. We will reserve decision.